IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CELESTE M. GONSALVES, | Case No. 25-cv-00171-DKW-KJM |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**[1] |
| vs. | |
| JUDGE KARIN L. HOLMA, *et al.*, | |
| Defendants. | |

On March 3, 2026, Defendants Judge Karin L. Holma, Judge Shirley M. Kawamura, and Judge Katherine G. Leonard filed a motion to dismiss *pro se* plaintiff Celeste M. Gonsalves' First Amended Complaint, asserting that Gonsalves had failed to cure the deficiencies of her initial Complaint—namely, that the Court lacks subject matter jurisdiction, Defendants are entitled to immunity from suit, and Gonsalves fails to state a claim.  Dkt. No. 47.

Having reviewed the First Amended Complaint, the parties' briefs, the record generally, and relevant case law, the Court agrees that dismissal is appropriate. Accordingly, the motion to dismiss is GRANTED without leave to amend, as described below.

---

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

## FACTUAL & PROCEDURAL BACKGROUND

## I.    The Amended Complaint

As with her initial Complaint, Dkt. No. 1, Gonsalves' First Amended Complaint alleges various violations of her rights by several Hawaiʻi state court judges during legal proceedings that culminated with her eviction.[2] *See generally* Dkt. No. 46.  She focuses largely on the conduct of Judge Holma, a First Circuit Court Judge.  *Id*. ¶¶ 17–43.  In 2021, Gonsalves appeared before Judge Holma in two simultaneous eviction cases.  *Id*. ¶ 17.  While presiding, Judge Holma (1) held hearings despite Gonsalves being absent on medical grounds, *id*. ¶¶ 17–19; (2) gave improper "legal advice and strategy" to plaintiffs' counsel, *id*. ¶ 19; (3) blocked or delayed Gonsalves in "filing motions or receiving court dates," *id*. ¶¶ 21–22; (4) failed to provide Gonsalves with explanations for the court's decisions, *id*. ¶ 23; and (5) denied Gonsalves' motions after having "rejected or deemed all of [Gonsalves'] valid arguments . . . as MOOT," *id*. ¶ 25–27. Eventually, Judge Holma granted the plaintiffs summary judgment in both cases, causing Gonsalves to be "illegally evicted." *Id*. ¶¶ 27–28.

---

[2]Defendants ask that the Court take judicial notice of further information about Gonsalves' eviction proceedings, which they provide in the form of her state court dockets.  *See* Dkt. Nos. 47-1 at 2 n.1, 47-2, 47-3.  Gonsalves also attempts to elaborate on the details of her proceedings in her opposition brief, beyond what is included in her First Amended Complaint.  *See* Dkt. No. 52 at 2–8.  Because these details are unnecessary for the purposes of the instant order, the Court declines to consider them.

In October 2021, Gonsalves appealed both eviction rulings to the Intermediate Court of Appeals. *Id*. ¶ 29. According to Gonsalves, Judge Holma contacted Judge Leonard, the appellate judge, and "conspired to control the outcome" of the appeals. *Id*. ¶ 30. Gonsalves wrote a letter to First District Chief Judge Melanie M. May complaining about her treatment by Judge Holma; Judge Holma subsequently denied Gonsalves' post-judgment motions, "demonstrating a pattern of retaliatory obstruction." *Id*. ¶¶ 32 & 34. Judge Holma further conspired to influence other legal actions relating to Gonsalves' eviction, including a criminal investigation against Gonsalves' landlord and a "Trial for Damages" against the same. *Id*. ¶¶ 38–41.

With regard to her appeals, Gonsalves alleges that Judge Leonard (1) "communicated with [Judge] Holma in a manner that influenced the outcome" of the appeals, *id*. ¶ 44; (2) issued decisions contrary to the law or Rules of Appellate Procedure, *id*. ¶¶ 45–47, and (3) failed to "adequately review" Gonsalves' motions, *id*. ¶¶ 48–50. Further, Judge Kawamura, a First Circuit Court judge who presided over a case[3] transferred by Judge Holma, violated Gonsalves' rights by (1) allowing opposing counsel to file a new motion for summary judgment despite a prior motion on the same grounds having been denied, *id*. ¶¶ 52–53; and (2) ignoring Gonsalves' evidence in opposition and granting the motion, *id*. 54–55.

---

[3]Gonsalves' First Amended Complaint is not clear as to which of the several lawsuits she describes was transferred. *Id*. ¶¶ 51–52.

## II.    Procedural History

On April 28, 2025, Gonsalves initiated this action.  Dkt. No. 1.  On December 16, 2025, the Court granted Defendants' motion to dismiss with leave to amend, concluding that Gonsalves' claims were barred by both Eleventh Amendment sovereign immunity or judicial immunity.  Dkt. No. 41.  On February 16, 2026, Gonsalves filed her First Amended Complaint, asserting that Defendants violated her Fourteenth Amendment procedural due process rights under 42 U.S.C. § 1983. Dkt. No. 46.  Gonsalves asserts her claims against Defendants in their individual capacities, *id*. ¶¶ 3–6, and requests compensatory and punitive damages from each state court judge, *id*. at 13.

On March 3, 2026, Defendants moved to dismiss, arguing that (1) Gonsalves had failed to address judicial immunity, which still barred her claims; (2) the Court lacks subject matter jurisdiction over the First Amended Complaint under the *Rooker-Feldman* doctrine; (3) sovereign immunity barred Gonsalves' claims to the extent that they were asserted against Defendants in their official capacity; and (4) Gonsalves fails to state a claim for relief.[4]  Dkt. No. 47 & 47-1.  Gonsalves opposes, asserting, *inter alia,* that judicial immunity does not apply because Defendants' conduct constitutes "administrative acts" and "clerical maneuvers," not "judicial

---

[4]The Court only addresses judicial immunity, as that is dispositive of Gonsalves' claims.  There is no need to address Eleventh Amendment immunity, as Gonsalves makes clear that her claims are only directed against Defendants in their individual capacity.  Dkt. No. 52 at 10-11.

acts." Dkt. No. 52 at 8–9. Defendants reply asserts, *inter alia*, that all of the actions alleged in the First Amended Complaint were judicial acts shielded by immunity. Dkt. No. 54.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do factual allegations that only permit the Court to infer "the mere possibility of misconduct." *Id.* at 678–79 (citing *Twombly*, 550 U.S.

at 555). The Court liberally construes a pro se pleading. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

### I.    Judicial Immunity

The Court previously held that Gonsalves' initial claims against Defendants were barred by judicial immunity. Dkt. No. 41. Now, for the same reason, the Court grants dismissal of Gonsalves' First Amended Complaint.

Judicial officers are absolutely immune from liability for actions taken during judicial proceedings.[5]   *See Pierson v. Ray*, 386 U.S. 547, 553–54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."); *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (explaining that courts have "long recognized judicial immunity, a sweeping form of immunity for acts performed by judges that relate to the judicial process." (internal quotation marks omitted)). "This

---

[5]The Court notes that "'judicial immunity is an immunity from suit' and bars [Gonsalves'] claims irrespective of the type of relief sought." *Marn v. McCully Assocs.*, 2013 WL 6894987, at *2 (D. Haw. Dec. 31, 2013) (quoting *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (per curiam)).

immunity applies even when the judge is accused of acting maliciously and corruptly," and is designed "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson*, 386 U.S. at 553–54; *see also Stump v. Sparkman,* 435 U.S. 349, 356 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority."). Judicial immunity may be overcome only if the judge's actions are "not taken in the judge's judicial capacity" or are "taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12.

Despite the Court's instructions when granting leave to amend, *see* Dkt. No. 41 at 9–10, Gonsalves' allegations in the First Amended Complaint concern only actions taken by Defendants in their judicial capacity. In fact, the allegations in Gonsalves' First Amended Complaint are virtually identical to those that the Court already considered and dismissed in her initial pleadings. *Compare* Dkt. No. 1 ¶¶ 16–54 *with* Dkt. No. 46 ¶¶ 17–53. In both, Gonsalves claims that Defendants, all of whom are state-court judges, violated her rights by denying her motions, "blocking" her filings, giving advice and aide to her opposing counsel, holding hearings in her absence, and conspiring together to ensure that the state court litigation would not end in Gonsalves' favor. As the Court has said previously, these are all judicial actions and are thus shielded by judicial immunity. *See Ogeone v.*

*Nacino*, No. 13-CV-00553 (DKW)(RLP), 2013 WL 5947028, at *3 (D. Haw. Nov. 5, 2013) (applying judicial immunity where plaintiff's allegations concerned "core judicial functions, such as presiding over proceedings, maintaining control over the case docket, and determining motions"); *Guity v. Hawaii*, No. 21-CV-00055 (LEK)(KJM), 2022 WL 106110, at *3 (D. Haw. Jan. 11, 2022) ("Even if the judges acted…as part of a conspiracy, they are immune from suit for acts performed pursuant to their official functions."); *Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of United States*, 577 F. Supp. 3d 1106, 1128 (D. Or. 2021) (holding that "even considering [p]laintiff's allegations" that judicial defendants "conspired…to retaliate against [p]laintiff by denying him due process," the alleged acts were "all judicial in nature for which [a judicial defendant] has absolute judicial immunity); *aff'd*, No. 22-35261, 2023 WL 6875413 (9th Cir. Oct. 18, 2023). Moreover, repeatedly stating that Defendants' "actions were taken outside the normal judicial process", *see e.g.*, Dkt. No. 46 at ¶¶ 26–28, does not make it so.

In her opposition, Gonsalves identifies a handful of allegations, which she claims speak to administrative, rather than judicial, conduct and, thus, fall outside of judicial immunity. Dkt. No. 52 at 8–9. First, Gonsalves alleges that Judge Holma "block[ed] her from filing Motions and obtaining court hearing dates," Dkt. No. 46 ¶ 31, which was then reversed in an "administrative switch," Dkt. No. 52 at 9. Second, in September 2021, Judge Holma "hand-carried" a motion to court "in order

to execute her plan" of "ruling in favor of the opposing party[]."  Dkt. No. 46 ¶ 26. Third, Judge Leonard "recategorized a Motion . . . so she could deem it as untimely." *Id.* ¶ 49.

None of these alleged actions are administrative in nature.  First, "maintaining control over the case docket" by, for instance, delaying, continuing, or even staying a case, and thus denying new filings altogether, is plainly a judicial act.  *Ogeone*, 2013 WL 5947028, at *3.  The same is true of "recategorizing" a motion, whatever that means.  *See Bennett v. United States*, No. 23-CV-1140 (WQH)(BLM), 2024 WL 4005098, at *18 (S.D. Cal. Aug. 5, 2024) (holding that defendant-judges who allegedly altered entries on the court docket were "entitled to judicial immunity"). As for Gonsalves' claim that Judge Holma "hand-carried" a motion to Court in order to address it, it is not clear why this would constitute a violation of Gonsalves' rights. Judges "hand-carry" motions and pleadings to court every single day without any claim that doing the same is a constitutional or statutory violation of some kind. Further, "[t]he filing of documents"—if that is what Gonsalves complains of—"is 'a basic and integral part of the judicial process'" and is certainly judicial in nature. *Armstrong v. Scribner*, No. 06-CV-852L(RBB), 2008 WL 268974, at *19 (S.D. Cal. Jan. 30, 2008) (quoting *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1390 (9th Cir. 1987)).  Because these cherry-picked allegations also fall within the gamut of judicial acts, Defendants are immune from any claim relating to them.  *See In re*

*Complaint of Jud. Misconduct*, 366 F.3d 963, 965 (9th Cir. 2004) (explaining that while "administrative functions" generally include "[p]ersonnel decisions," they do not include events that "arose directly and immediately out of a confrontation with the judge in his or her official capacity").

Accordingly, the claims in the First Amended Complaint are barred by judicial immunity and must be dismissed.

## II.    Leave to Amend

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2). However, justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

In its prior Order, the Court informed Gonsalves in no uncertain terms that her claims were barred by judicial immunity, and explained both the scope of that immunity and the reasons for it. Dkt. No. 41 at 9–10. The Court nonetheless gave Gonsalves an opportunity to amend. Afforded that opportunity, Gonsalves chose to keep most of her original allegations without change. Because the Court has already extended Gonsalves the chance to fix the deficiencies with her pleadings, and she

has not done so, it declines to extend that leave again. *See Ascon Props., Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir. 1989) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, Dkt. No. 47, is GRANTED, and the First Amended Complaint is DISMISSED WITH PREJUDICE.

The Clerk is instructed to enter Judgment pursuant to this Order in favor of Defendants and to then close this case.

IT IS SO ORDERED.

DATED: May 20, 2026 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

*Celeste M. Gonsalves v. Judge Karin L. Holma, et al*; Civil No. 25-00171 DKW-KJM; **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**